FILED

Dec 01 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ judep          DEPUTY

Christopher C. Smith (SBN 238882)
**BROOKS KUSHMAN P.C.**
1000 Town Center, 22nd Floor
Southfield, MI 48075
Tel: (248) 358-3351; Fax: (248) 358-3351
csmith@brookskushman.com

William E. Thomson, Jr. (SBN 47195)
**BROOKS KUSHMAN P.C.**
445 S. Figueroa Street, Suite 3100
Los Angeles, CA 90071-1635
Tel: (213) 622-3003; Fax: (213) 622-3053
wthomson@brookskushman.com

Attorneys for Applicants

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Ex Parte Application of<br><br>FORD MOTOR COMPANY<br>and FORD-WERKE GmbH,<br><br>Applicants,<br><br><br>For an Order Pursuant to<br>28 U.S.C. § 1782 Granting<br>Leave to Obtain Discovery<br>from Qualcomm Incorporated<br>for Use in Foreign<br>Proceedings. | Civil Action No.   21MC1667<br><br>**FORD'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS AND SUPPORTING MEMORANDUM** |

1    Ford-Werke GmbH and its parent Ford Motor Company (collectively "Ford")
2    apply to the Court *ex parte* pursuant to 28 U.S.C. § 1782 for an order granting Ford
3    leave to obtain targeted discovery from modem supplier Qualcomm Incorporated
4    ("Qualcomm") for Ford's defense in a patent infringement lawsuit filed by Godo
5    Kaisha IP Bridge 1 ("IP Bridge") against Ford-Werke GmbH (the "German
6    Litigation"). Specifically, Ford seeks production of the agreement(s) between IP
7    Bridge and Qualcomm relating to the patent IP Bridge asserts against Ford-Werke
8    in Germany: the German part of European Patent 2 294 737 (the '737 Patent). Ford
9    asserts that agreement exhausts IP Bridge's patent rights against Ford vehicles that
10   use Qualcomm chipsets.

11   Ford provided a copy of this *ex parte* application to IP Bridge and Qualcomm
12   contemporaneous with this filing.

13   ## I.    FACTUAL BACKGROUND

14   ### A.    IP Bridge sues Ford-Werke for infringement of the '737 Patent

15   On July 14, 2021, IP Bridge sued Ford-Werke GmbH in Munich Regional
16   Court for infringement of the '737 Patent. (Declaration of Dr. Benjamin Schröer
17   ("Schröer Decl.") at ¶4.) The lawsuit alleges that cellular modem technology
18   included as a component on certain Ford vehicles infringes the '737 Patent. (*Id*.)
19   Ford neither designs nor manufactures the at-issue cellular modem technology. (*Id*.)
20   The technology is designed by Qualcomm, is manufactured by Qualcomm's
21   manufacturing partners, and is supplied to Ford through Tier 1 automotive suppliers.
22   (*Id*.)

23   ### B.    IP Bridge previously sued Qualcomm, and as part of the settlement,
24       negotiated a separate "covenant to sue Qualcomm last" for
25       infringement of the '737 Patent

26   In March 2018, years before suing Ford-Werke GmbH in 2021, IP Bridge
27   sued Qualcomm in the District of Delaware for infringement of semiconductor chip
28

1  manufacturing patents unrelated to the '737 Patent, Case No. 1-18-cv-00485.
2  (Declaration of Christopher Smith (("Smith Decl.") at ¶4, Ex. 1.) The parties settled
3  that case in January 2019. (Smith Decl. at ¶5, Ex. 2.) IP Bridge also asserts the '737
4  Patent against HTC Corp. ("HTC") in the Regional Court of Mannheim in Germany
5  (the "HTC Litigation"). Ford understands that Qualcomm (or its affiliates) entered
6  into an agreement concerning the '737 Patent (and others), which includes a
7  provision in which IP Bridge agreed to sue Qualcomm "last" for infringement of the
8  '737 Patent and others. Ford further understands that HTC in the HTC Litigation has
9  argued that Qualcomm's agreement with IP Bridge would excuse HTC from
10 infringement under the doctrine of patent exhaustion. (Schröer Decl. at ¶5.)

11 **C.     Ford asserts in the German litigation that IP Bridge's covenant to**
12 **sue Qualcomm "last" for infringement of the '737 Patent**
13 **authorizes Qualcomm to sell its chipsets, leading to exhaustion of**
14 **the '737 Patent**

15         Ford asserts that IP Bridge's covenant to sue Qualcomm "last" in the January
16 2019 agreement gives rise to patent exhaustion under both German and U.S. law.
17 Ford asserts that the covenant to sue Qualcomm "last" is illusory and, in practice,
18 equates to a covenant not to sue Qualcomm, which the Federal Circuit has held is
19 equivalent to a license giving rise to patent exhaustion. *See TransCore, LP v. Elec.*
20 *Transaction Consultants Corp.*, 563 F.3d 1271 (Fed. Cir. 2009); *Ortho Pharm. Corp.*
21 *v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032 (Fed. Cir. 1995).

22         *First*, a covenant to sue Qualcomm "last" is inherently an authorization by IP
23 Bridge – in exchange for consideration – of Qualcomm's continued sales of modem
24 chipsets into the market. The Supreme Court has held such authorization by the
25 patent owner exhausts its applicable patent rights. *See Quanta Comput., Inc. v. LG*
26 *Elecs., Inc.*, 553 U.S. 617, 128 S.Ct. 2109, 2115 (2008) ("The longstanding doctrine
27 of patent exhaustion provides that the initial authorized sale of a patented item

28

terminates all patent rights to that item.") And even when that authorized sale is subject to "an express, otherwise lawful [contractual] restriction, the patentee does not retain patent rights in that product." *Impression Prods. v. Lexmark Int'l Inc.,* 137 S. Ct. 1523, 1527 (2017). "The purchaser and all subsequent owners are free to use or resell the product just like any other item of personal property, without fear of an infringement lawsuit." *Id.* at 1529. "Patent exhaustion reflects the principle that, when an item passes into commerce, it should not be shaded by a legal cloud on title as it moves through the marketplace." *Id.* at 1534. While IP Bridge no-doubt intended to avoid exhaustion with its covenant to sue Qualcomm "last," the Federal Circuit in *TransCore v. Electronic Transaction Consultants Corp.*, 563 F. 3d 1271, 1275 (Fed. Cir. 2009), held "the parties' intent with respect to downstream customers is of no moment in a patent exhaustion analysis." The only relevant question under *Quanta* is whether IP Bridge authorized Qualcomm's *sales* into the market of devices practicing IP Bridge's patents. Through its covenant to sue Qualcomm "last" (in exchange for consideration), IP Bridge has inherently authorized Qualcomm's continued sales of modem chipsets practicing the '737 Patent.

*Second*, the January 2019 agreement is not known to include an enumerated list of defendant-targets of which Qualcomm is listed "last." On the contrary, there is such a great number of potential defendants in the supply chain (and customer base) who "use" or "sell" the Qualcomm chipsets that Qualcomm can never be deemed "last" to sue.  Said another way, there is always some *other* entity left whom IP Bridge could sue (must sue) for infringement *before* suing Qualcomm.

*Third*, a recovery by IP Bridge through litigation against a subsequent distributor in the supply chain of the Qualcomm chipset would immediately exhaust IP Bridge's patent rights as to that Qualcomm chipset. Thus, there can be no

FORD'S *EX PARTE* APPLICATION FOR AN
ORDER PURSUANT TO 28 U.S.C. § 1782

subsequent or "last" lawsuit by IP Bridge against Qualcomm concerning that chipset. The same is true if IP Bridge's lawsuit fails on the merits.

For at least these reasons, Ford asserts that the January 2019 agreement between IP Bridge and Qualcomm is relevant to the question of whether the covenant gives rise to exhaustion and amounts to a license in fact.

**D.    A German court has indicated its willingness to consider the impact IP Bridge's agreement with Qualcomm may have on exhaustion of the '737 Patent**

IP Bridge also asserts the '737 Patent against HTC in the Regional Court of Mannheim in Germany. At an oral hearing on March 19, 2021, the court indicated that it considers the January 2019 agreement between IP Bridge and Qualcomm to be relevant as it may lead to exhaustion for the German part of the '737 Patent in relation to products incorporating Qualcomm chipsets despite being called a "covenant to be sued last." (Schröer Decl. at ¶6.) To that end, the Regional Court of Mannheim appointed a court expert requesting an assessment of the legal nature of the agreement and of the legal effect it may have under US law in relation to the German part of the '737 Patent and the defendant's disputed products. (Schröer Decl. at ¶7.) On May 28, 2021, the Mannheim court issued a corresponding order to take evidence on the content and the legal nature and legal effect of the agreement between IP Bridge and Qualcomm. (*Id.*)

**E.    IP Bridge rejected Ford's request for the agreement; Qualcomm requested that Ford file this application under 28 U.S.C. § 1782**

On October 21, 2021, Ford sent a request to both IP Bridge and Qualcomm requesting production of the agreement pursuant to a suitable non-disclosure agreement. IP Bridge rejected Ford's request, noting that the agreement lacks a "license" and that the Higher Regional Court of Karlsruhe rejected the assertion that

a covenant to sue "last" could give rise to exhaustion under German law.[1] (Smith Decl. at ¶6, Ex. 3.) Qualcomm, in contrast, did not object but requested that Ford serve this application under 28 U.S.C. § 1782 Action. (Smith Decl. at ¶7, Ex. 4.)

## II.   SUMMARY OF REQUESTED RELIEF

Under 28 U.S.C. § 1782, interested parties may obtain discovery for use in foreign litigations from companies located within the United States. In support of its FRAND and exhaustion defenses in the German Litigation, Ford seeks narrowly tailored document discovery from Qualcomm concerning agreements between Qualcomm and IP Bridge relating to the '737 Patent and any communications between Qualcomm and IP Bridge pertaining to the negotiations and execution of those agreements.

Ford's application satisfies Section 1782's three statutory requirements. *First*, Ford's application is filed in "the district in which [the] person resides," 28 U.S.C. § 1782(a). Qualcomm's headquarters are in San Diego, California in the Southern District of California. *Second*, Ford seeks the discovery "for use in a proceeding in a foreign . . . tribunal," *id*., specifically the Munich Regional Court in Germany. *Third*, Ford and its foreign subsidiary qualify as "interested persons" in the German Litigation because Ford-Werke GmbH is a named party to the proceeding and Ford Motor Company is the parent company of Ford of Europe, which is the parent of Ford-Werke GmbH. *See id.; Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) (litigants are common example of "interested persons")

The factors the Supreme Court identified for analyzing Section 1782 applications favor granting Ford's request. Qualcomm is not a participant in the

---

[1] *After* this decision of the Higher Regional Court of Karlsruhe on October 25, 2020, the Regional Court of Mannheim on March 19, 2021 indicated that it considers the agreement between IP Bridge and Qualcomm to be relevant as it may lead to exhaustion for the German part of the '737 Patent in relation to products incorporating Qualcomm chipsets.  (Schröer Decl. at ¶6.)

German Litigation, and Section 1782 provides an effective mechanism for obtaining this targeted discovery in the German case. In addition, the German jurisdiction at issue here is receptive to the type of discovery sought by Ford, the discovery provides key information for the German Litigation, and the request is not made to circumvent any limitation on discovery imposed by the German court. Finally, the discovery requests are narrowly tailored and are not unduly intrusive or burdensome. To the extent the requested documents contain confidential business information, Ford will agree to protect the information from disclosure as may be appropriate. Accordingly, Ford respectfully requests that the Court enter the order attached as Exhibit 5 and allow Ford to serve the subpoena attached as Exhibit 6.

### III.   ARGUMENT

**F.   Legal Standard**

Section 1782 is "the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp*., 542 U.S. at 247. Over time, Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings." *Id*. at 247-49.

Section 1782 provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement may be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). The statute thus sets forth three requirements, authorizing the district court to "grant an application pursuant to 28 U.S.C. § 1782 where: (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made; (2) the discovery is for use in a proceeding

FORD'S *EX PARTE* APPLICATION FOR AN
ORDER PURSUANT TO 28 U.S.C. § 1782

before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *In re LG Elecs. Deutschland GMBH*, No. 12cv1197-LAB (MDD), 2012 U.S. Dist. LEXIS 70570, at *2 (S.D. Cal. May 21, 2012) (citation omitted).

In *Intel*, the Supreme Court set forth several non-exclusive factors to aid district courts in determining how to exercise their discretion to grant Section 1782 applications. These factors include: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65; *Chevron Corp. v. E-Tech Int'l*, No. 10cv1146-IEG (WMc), 2010 U.S. Dist. LEXIS 94396, at *11 (S.D. Cal. Sep. 10, 2010) (outlining *Intel* factors). Courts in this District have previously granted applications similar to Ford's application seeking discovery from Qualcomm. *See, e.g., In re Ex Parte App. of Apple Inc*., No. 3:11-cv-03058-IEG-BGS, slip op. (S.D. Cal. Oct. 13, 2011) (Smith Decl. at ¶10, Ex. 7); *In re Ex Parte App. of Apple Inc*., No. 3:12-cv-00147-LAB-WMC, slip op. (S.D. Cal. Jan. 25, 2012) (Smith Decl. at ¶11, Ex. 8); *In re Apple, Inc.*, No. 15cv1780 BAS (RBB), 2015 U.S. Dist. Lexis 137147, at *12 (S.D. Cal. Oct. 7, 2015) (granting ex parte application seeking discovery of Qualcomm under Section 1782 for documents pertaining to intellectual property agreements.) (Smith Decl. at ¶12, Ex. 9); *In re Ex Parte Application of Daimler AG et al*., Case No. 3:21-mc-00948 (S.D. Cal. August 27, 2021) (granting ex parte application seeking discovery of Qualcomm under Section 1782 for documents pertaining to intellectual property agreements.) (Smith Decl. at ¶13, Ex. 10.)

FORD'S *EX PARTE* APPLICATION FOR AN
ORDER PURSUANT TO 28 U.S.C. § 1782

1

### G.    Ford's Application Meets the Section 1782 Requirements

2

3

Ford's application meets each of the three statutory requirements of 28 U.S.C. § 1782.

4

***First***, the company from which discovery is sought, Qualcomm, "resides or is

5

found" in this District. 28 U.S.C. § 1782(a). Qualcomm has its principal place of

6

business at 5775 Morehouse Drive, San Diego, California, which is located within

7

this District. (Smith Decl. at ¶14, Ex. 11 (excerpt of 2021 Qualcomm 10K).)

8

***Second***, the discovery is sought for use in a "proceeding before a foreign

9

tribunal." 28 U.S.C. § 1782(a). Ford seeks the information for use in establishing at

10

least the defenses of license and/or exhaustion in its patent infringement action

11

brought by IP Bridge in a foreign tribunal, specifically the Munich Regional Court

12

in Germany. This venue is a court of first instance for hearing patent litigation. Ford

13

further intends to use the requested discovery to help establish the FRAND royalty

14

rate for the asserted allegedly standard-essential patents in the German Litigation.

15

As previous cases have recognized, the German court and related foreign

16

adjudicative bodies qualify as "tribunals" for purposes of Section 1782. *See, e.g.,*

17

*Cryolife, Inc. v. Tenaxis Med., Inc*., No. C08-05124 HRL, 2009 U.S. Dist. LEXIS

18

3416, at *1, 5 (N.D. Cal. Jan. 13, 2009) (permitting discovery for use in patent

19

infringement suit pending in "Dusseldorf Regional Court in Germany"); *In re Apple,*

20

*Inc.*, 2015 U.S. Dist. Lexis 137147, at *5-6 (permitting discovery of Qualcomm

21

licensing documents for litigation proceedings in the United Kingdom, Germany and

22

the Netherlands).

23

***Third***, as a named party in the German action, Ford-Werke GmbH qualifies

24

as an "interested person." 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 256 ("No doubt

25

litigants are included among . . . the 'interested person[s]' who may invoke § 1782");

26

*see also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011);

27

*In re Quest Communs., Int'l, Inc.,* No. 3:08mc93, 2008 U.S. Dist. LEXIS 115845, at

28

*9. Because Ford-Werke GmbH is a subsidiary of Ford of Europe, a subsidiary of Ford Motor Company, which is also involved in Ford-Werke GmbH's defense in the German case, Ford Motor Company is also an interested party. Accordingly, Ford has satisfied the statutory requirements for an application under 28 U.S.C. § 1782.

## H.    The Supreme Court's *Intel* Factors Strongly Favor Granting Ford's Application

In addition to the statutory factors, the factors the Supreme Court identified in *Intel* weigh heavily in favor of the Court exercising its discretion to grant Ford's application for discovery.

### 1.    Qualcomm Is Not a Party in the Foreign Proceedings

Qualcomm is not a party in IP Bridge's German case against Ford. While IP Bridge is a party to the litigation, German court rules do not allow for discovery of documents such as the January 2019 agreement(s) between IP Bridge and Qualcomm.

In German civil procedure law, there is generally no right to pre-trial discovery comparable to the discovery available in the United States. Instead, there are only a limited number of procedural provisions which allow the plaintiff to make an application to obtain certain evidence from another party to the lawsuit or a third party, which the plaintiff would not otherwise be able to obtain. At the same time, there are no rules under German civil procedural law prohibiting a party to use evidence obtained from discovery procedures abroad. Instead, German courts generally have to consider any evidence submitted by a party unless certain, rather narrow, reasons apply rendering the evidence inadmissible. Discovery pursuant to 28 U.S.C. § 1782 is no such reason. (Schröer Decl. at ¶8.)

In particular, there are two options for a party under German civil procedure law to obtain unavailable evidence. First, a German court can order a party to the lawsuit or a third party to provide documents in its possession under Section 142

para 1 Code of Civil Procedure (*Zivilprozessordnung*). Second, Section 140c German Patent Act (*Patentgesetz*) and Sections 809, 810 of the German Federal Civil Code (*Burgerliches Gesetzbuch*) confer a limited right to the production of documents and to inspection of a potentially infringing device. (Schröer Decl. at ¶9.)

However, these procedures are not sufficient to allow Ford to obtain useful discovery about Qualcomm's licensing/covenanting agreements with IP Bridge for at least the following reasons.

First, the requirements of Section 140c of the German Patent Act and Sections 809 and 810 of the German Federal Civil Code are not satisfied by the agreement between Qualcomm and IP Bridge. Section 140c of the German Patent Act and Section 809 of the German Federal Civil Code pertain only to documents in the possession of, or within the control of, an alleged infringer—not Qualcomm or IP Bridge in the German Litigation. (Schröer Decl. at ¶10.) Further, Section 810 of the German Federal Civil Code requires discovery of a document that has been created in the interest of the requesting party or which documents a legal relationship between the requesting party and another party. In the German Litigation, the agreement between Qualcomm and IP Bridge has not been created in the interest of Ford, nor does it document a legal relationship of Ford. (Schröer Decl. at ¶11.)

Second, an order under Section 142 para 1 Code of Civil Procedure is not enforceable. If the party to the lawsuit, or the third party that is ordered to produce documents, disobeys the order, the German court has no ability to impose a penalty or enforce the order. (Schröer Decl. at ¶12.)

Third, the procedure under Section 142 Code of Civil Procedure is available only for discovery of specific documents expressly referenced in the lawsuit by a party and which are relevant for the determination of the proceedings. Even if these requirements are met, it is in the court's discretion to order the provision of the

specific document(s). In practice, German courts are very reluctant to issue such orders and, therefore, such orders are only rarely granted. (Schröer Decl. at ¶13.)

Thus, as general rule, the parties in a German litigation are left to make their cases with publicly available evidence.

## 2.    Ford Seeks Highly Relevant Information that Will Assist the Foreign Court

The nature and character of the German proceeding and the receptivity of the German court to U.S. federal-court judicial assistance weighs in favor of this Court granting Ford's request for discovery. *See Intel*, 542 U.S. at 264. Because the nature and character of the German proceeding involves IP Bridge's allegations of patent infringement, discovery regarding relevant agreements pertaining to that allegation is critical. *See London v. Does*, 279 F. App'x 513, 515 (9th Cir. 2008) (affirming order granting Section 1782 discovery where proof sought was "critical" in light of the "nature and character of the foreign case").

Prior cases have recognized the receptiveness of the German jurisdiction at issue here to use of discovery obtained through Section 1782. *See, e.g., In re Ex Parte Application of Daimler AG et al*., Case No. 3:21-mc-00948, at \*1 (Germany); *Heraeus Kulzer*, 633 F.3d at 597 (same); *Cryolife*, 2009 U.S. Dist. LEXIS 3416, at \*8-9 (same); *see also In re Procter & Gamble Co*., 334 F. Supp. 2d 1112, 1114-16 (E.D. Wis. 2004) (same). This Court should likewise hold that this factor weighs in favor of granting Ford's application because the agreements being sought are highly relevant to assessing whether IP Bridge's patent rights are exhausted and to determining the FRAND rate for the cellular modem stack, which could impact SEP royalty rates not only in Germany—but worldwide! Further, these agreements are relevant to determining whether exhaustion applies in Germany or abroad and how such exhaustion would impact the overall FRAND rate for the cellular modem stack. *In re Apple, Inc.*, 2015 U.S. Dist. Lexis 137147, at \*9-10. This defense could also

potentially impact IP Bridge's ability to sue Ford in other jurisdictions—including the United States—potentially preventing later litigations.

### 3.     No Foreign Discovery Restrictions Bar Ford's Requested Discovery

28 U.S.C. § 1782 does not require that the documents sought be discoverable in the foreign courts. *Intel*, 542 U.S. at 260-63. However, a district court could consider whether an applicant was seeking in bad faith "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 265.[2] Here, Ford is unaware of any restrictions on proof-gathering procedures under German procedural law that would prohibit obtaining the discovery it seeks through Section 1782. To the contrary, German courts are receptive to evidence obtained through Section 1782 proceedings in the United States. There is no rule prohibiting a party to seek evidence via section 1782 or declaring such evidence inadmissible in German legal proceedings. Therefore, under German law, any documents obtained in the U.S. pursuant to 28 U.S.C. § 1782 could be introduced into the German Litigation by simple submission, and the German court would have to consider the evidence in its decision making. (Schröer Decl. at ¶14.) Consequently, as noted above, U.S. courts have routinely granted applications under Section 1782 for evidence to be used in the German court at issue here. *See, e.g., Heraeus Kulzer*, 633 F.3d at 597 (Germany); *In re Apple, Inc.*, 2015 U.S. Dist. Lexis 137147, at *12-13.

---

[2] *See also In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) ("[O]nly upon authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782 should a district court refrain from granting the assistance offered by the act") (quotation marks omitted; emphasis in original); *Procter & Gamble*, 334 F. Supp. 2d at 1116 (holding that "to decline a § 1782(a) request based on foreign nondiscoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States").

### 4. Ford's Discovery Is Narrowly Tailored to Avoid Undue Burden

Ford's proposed discovery requests are narrowly tailored and minimally burdensome. *See Intel*, 542 U.S. at 265 ("unduly intrusive or burdensome requests may be rejected or trimmed"). Ford is only requesting document discovery on the agreements between Qualcomm and IP Bridge pertaining to patent rights for cellular modem technology at issue in this case, and related communications between those parties.

### 5. The Court Should Exercise Its Discretion and Grant Ford's Request

As discussed above, the *Intel* factors, and other factors considered by the courts, favor the Court exercising its discretion to grant Ford's application. Courts in this Circuit routinely permit discovery under Section 1782 where, as here, the applicant has satisfied the three statutory requirements and a majority of the *Intel* factors support granting the requested relief. *See, e.g., In re Am. Petroleum Institute*, No. 11-80008-JF (PSG), slip op. (N.D. Cal. Apr. 7, 2011) (Smith Decl. at ¶15, Ex. 12); *In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *11; *London*, 279 F. App'x at 513; *In re Application of LG Elecs. Deutschland GMBH*, 2012 U.S. Dist. LEXIS 70570, at *17; *Govan Brown & Assocs. v. Doe*, No. C 10-2704-PVT, 2010 U.S. Dist. LEXIS 88673, at *7-8 (N.D. Cal. Aug. 6, 2010); *Kwong v. Battery Tai-Shing Corp*., No. 08-80142, slip op. (N.D. Cal. Sept. 19, 2008) (Smith Decl. at ¶16, Ex. 13); *In re Apple, Inc.*, 2015 U.S. Dist. Lexis 137147, at *12-13; *In re Ex Parte Application of Daimler AG et al*., Case No. 3:21-mc-00948, at *1.

## IV.   CONCLUSION

Ford seeks narrowly tailored discovery for use in the German Litigation. Because Ford's request satisfies the three statutory requirements of 28 U.S.C. § 1782 and because the *Intel* factors collectively weigh in favor of granting the application,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ford respectfully requests that this Court issue the proposed order attached as Exhibit 5, authorizing the issuance of a subpoena in substantially the same form as Exhibit 6.


DATED:  December 1, 2021

By:   /s/ Christopher C. Smith
Christopher C. Smith (SBN 238882)
**BROOKS KUSHMAN P.C.**
1000 Town Center, 22nd Floor
Southfield, MI 48075
Tel: (248) 358-3351; Fax: (248) 358-3351
csmith@brookskushman.com

William E. Thomson, Jr. (SBN 47195)
**BROOKS KUSHMAN P.C.**
445 S. Figueroa Street, Suite 3100
Los Angeles, CA 90071-1635
Tel: (213) 622-3003; Fax: (213) 622-3053
wthomson@brookskushman.com

*Attorneys for Applicants*

FORD'S *EX PARTE* APPLICATION FOR AN
ORDER PURSUANT TO 28 U.S.C. § 1782